UNITED STATES *v.* MASSCE & Co. (No. 1975).[1]

1. CONSTRUCTION, PARAGRAPH 347, TARIFF ACT OF 1913—"ADVANCED"—"CRUDE"— FEATHER FLUES.

The covering, and with it the shorter lateral growth on one side of goose quills, was stripped by hand and imported, to be used, after having received appropriate treatment, for making millinery and other ornaments, for trimming Christmas trees, and for various other purposes. Conceding the merchandise to be feathers, it is classifiable under paragraph 347, tariff act of 1913, as "crude" and not as "advanced" feathers. In this paragraph such treatment as dressing or coloring was deemed an advancement by Congress, indicating that some processing of the feathers by which their condition was improved or their value enhanced was the advancement which Congress intended to be necessary to an increased rate of duty.

United States Court of Customs Appeals, December 9, 1919.

APPEAL from Board of United States General Appraisers, Abstract 43009.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* assistant attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument Oct. 17, 1919, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise here, it is agreed, consists of feathers obtained by stripping off one side of goose quills.

While as a practical question, although probably not affecting its tariff classification, it might be thought these stripped-off parts, instead of being feathers, were parts of feathers, yet the argument upon both sides proceeds upon the theory, and this decision is upon the same basis, that the merchandise is for tariff purposes feathers. They are classifiable under paragraph 347 of the act of 1913, the material part of which we quote:

347. Feathers and downs, on the skin or otherwise, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, 20 per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner and not suitable for use as millinery ornaments, including quilts of down and manufactures of down, 40 per centum ad valorem.

Duty was taken at 40 per cent and the importer contends for 20 per cent ad valorem under the paragraph. The Board of General Appraisers sustained the protest. The facts are not in dispute.

---

[1] T. D. 38214 (37 Treas. Dec., 258).

Without entering into a technical description of the article, a feather is composed of a quill from which on two sides lateral growths appear extending to the tip, which growths are longer on one side than on the other. The merchandise here was obtained by stripping by hand from the goose quills the covering and with it the shorter lateral growth on one side only. The other side bearing the longer lateral growth was not imported. Nothing has been done to the imported parts since they were stripped from the parent quills. After importation these parts are devoted to different uses. After being variously treated they are employed as material for making millinery and other ornaments, for trimming Christmas trees and various other uses. In order to be so used they are cleaned and otherwise manipulated according to the purpose to which they are to be devoted. Sometimes the entire feather is imported and used without being stripped. Sometimes the other stripped parts are imported, in which case they are generally used by people who manufacture bedding. The record here shows that there is in this country a smaller demand for entire feathers or for the parts which contain the longer lateral growths than there is for the imported merchandise.

Paragraph 347 provides that feathers on the skin or otherwise shall be subject to the lower rate of duty if they are crude or not dressed or colored or otherwise advanced or manufactured, but if dressed, colored, or otherwise advanced or manufactured in any manner and not suitable for use as millinery ornaments, etc., they are subject to a higher rate.

The simple question here is, therefore, Has the stripping of this merchandise from the quills upon which it grew "advanced" the same within the meaning of paragraph 347? We think it has not. It is just as crude as was the original feather, just as crude as is the other part. The mere splitting of a straw or the splitting of a stick of wood could hardly be said of itself to remove the split portions from the class of articles to which the entirety belonged unless some explicit statutory provision so required. The treatment of the merchandise here has not advanced it beyond the state of crude material nor appropriated it to any particular use.

Paragraph 425 of the act of 1897, a predecessor of paragraph 347, provided for the classification of feathers in language of legal import not different from that now under consideration. In T. D. 25460 (G. A. 5739), decided July, 1904, the Board of General Appraisers had before it merchandise much like that here involved. It was held that these feathers were advanced within the meaning of the language. The Government points out that in subsequent tariff acts Congress has reenacted the paragraph without change of language in this respect and therefrom argues a legislative adoption of a judicial interpretation which should control here. An exam-

ination of the majority and minority opinions of the members of the board in that case, however, discloses that while the goose feathers there had been stripped apparently the same as in this case, they had in addition been cleaned and in most part chopped or stripped in small pieces instead of being in the original feather lengths, as here. The feathers here have not been cleaned and that fact alone may well distinguish the two cases. At any rate, we do not regard it as controlling here.

It is pointed out that in other decisions of the Board of General Appraisers there has been a lack of uniformity of views as to the proper classification of merchandise very similar to or identical with that here involved. We find it unnecessary to enter upon any review of these cases in view of the provisions of the present paragraph. If the word "advanced" were not therein, there could be no question here as to the proper rate of duty. Without undertaking to define the precise application of that word, it appears that such treatment as dressing or coloring was deemed an advancement by Congress, indicating that some processing of the feathers by which their condition was improved or their value enhanced was the advancement which Congress intended to be necessary to an increased rate of duty. We do not think the merchandise here has been so advanced.

The judgment of the Board of General Appraisers is *affirmed*.