## UNITED STATES v. KRESGE Co. (No. 2259).[1]

1. ARTIFICIAL FRUITS.

   Pincushions made to resemble fruits, but so crudely as to lack the decorative effect characteristic of the fruits they attempt to simulate, should have been classified as manufactures of silk, under paragraph 318, tariff act of 1913, rather than as artificial and ornamental fruits, under paragraph 347.

2. CONSTRUCTION AIDED BY CONTEXT—FEATHERS AND QUILLS.

   Since Congress has seen fit to provide separately for feathers and quills, they must be regarded as distinctly different tariff entities    Manufactures of

---

[1] T. D. 39915.

quills are associated in paragraph 368, tariff act of 1913 with manufactures of bone, chip, horn, and whale bone, and from that association it can hardly be presumed that the paragraph was intended to cover either flight feathers or their barbs, which differ radically from the named materials in quality texture, and use.

3. CHRISTMAS TREES MADE OF FEATHERS.

Miniature artificial Christmas trees, the foliage made of the barbs of flight feathers and being the material of chief value, can not be classified as manufactures of quills, under paragraph 368, tariff act of 1913, and their classification as feather manufactures, under paragraph 347, is not disturbed.

United States Court of Customs Appeals, November 17, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8606 (T. D. 39451).

[Modified.]

*William W. Hoppin,* Assistant Attorney General, for the United States.
*Barnes, Chilvers & Halstead (Frank M. Halstead* of counsel) for appellee.

[Oral argument Oct. 3, 1923, by Mr. Hoppin and Mr. Halstead.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the tariff status of pincushions and of small artificial Christmas trees imported at the port of New York. The collector classified the pincushions as artificial fruits dutiable at 60 per cent ad valorem under paragraph 347 of the tariff act of 1913, and the Christmas trees as manufactures in chief value of feathers dutiable at he same rate under the same paragraph, which said paragraph in so far as pertinent reads as follows:

347. * * * artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits * * * of whatever material composed, not specially provided for in this section, 60 per centum ad valorem; * * * and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other material herein mentioned, 60 per centum ad valorem.

The importer claimed in its protests and brief that the pincushions were manufactures in chief value of silk dutiable at 45 per cent ad valorem under paragraph 318 of the tariff act of 1913, and that the Christmas trees were dutiable at 20 per cent ad valorem as manufactures of quills under the provisions of paragraph 368 of the same act. The paragraphs relied upon by the importer in his protest and brief in so far as pertinent are as follows:

318. * * * Manufactures of silk, or of which silk or silk and india rubber are the component materials of chief value, not specially provided for in this section, 45 per centum ad valorem.

368. * * * Manufactures of bone, chip, grass, horn, quills, whalebone, 20 per centum ad valorem.

The Board of General Appraisers sustained protests 950743 and 952823 covering pincushions and protests 948337, 952821, 956333, and 956336 relating to the Christmas trees.

From that decision the Government appealed.

It appears from the samples in evidence that the pincushions are so crudely made that they do not produce the decorative effect which is the characteristic of natural flowers, fruits, and leaves. The coloring and the form of the articles are so lacking in finish that they produce only to a meager extent the impression of natural fruits and would not be regarded by people in general as coming within the designation of artificial fruits. Indeed, it would be just as reasonable to classify the goods as artificial fruits as it would be to accept as portraits the cartoons of elder statesmen.

We must therefore hold that pincushions are not classifiable as artificial fruits, and that as they are made in chief value of silk they are dutiable under paragraph 318 as claimed in the protest.—Cochran Co. et al. v. United States (10 Ct. Cust. Appls. 62, 65; T. D. 38336); United States v. Sears, Roebuck & Co. (11 Ct. Cust. Appls. 412; T. D. 39323); United States v. U–Neak Dinner Favors (Inc.) (11 Ct. Cust. Appls. 391; T. D. 39316).

The miniature Christmas trees are crude imitations of pine trees which have the appearance of growing out of a small flower pot. The body of the tree is made of wood and wire and the pine needles or leafy part of the tree are manufactured from the barbs of flight feathers which barbs were removed from the shaft, stem, rachis, or quill to which they were attached. The material of which the pine needles or leafy part of the tree is made is the component of chief value.

The board held that inasmuch as the merchandise was made in chief value of *feathers known as quills*, it was dutiable as a manufacture of quills under the provisions of paragraph 368.

We can not agree with that ruling. It is true that the flight feathers of geese and ducks are known as quills or quill feathers. It is also true, however, that the shaft or stem of a feather stripped of its barbs is commonly known as a quill and is designated by no other name by people in general. See United States v. Massce & Co. (9 Ct. Cust. Appls. 256; T. D. 38214). As Congress has seen fit to separately provide for manufactures of feathers and for manufactures of quills, we think that feathers and quills must be regarded as distinctly different tariff entities.

Manufactures of quills are associated in paragraph 368 with manufactures of bone, chip, horn, and whalebone, and from that association, it can hardly be presumed that the paragraph was intended to cover either flight feathers or their barbs, a material which differs radically from bone, chip, and horn in quality, texture,

and use.—Adams et al. *v.* Bancroft (1 Fed. Cas. p. 84). Moreover, to hold that the designation quills means flight feathers would remove that class of feathers from the millinery paragraph, and, notwithstanding the fact that they are specially fitted and possibly chiefly used for the manufacture of millinery and millinery ornaments, would subject them to the low rate of duty prescribed for manufactures of substances differing from feathers in nature, character, and use. In addition, to give to the word quills the signification contended for by the importer would result in eliminating from paragraph 368 manufactures of the hard horny bony stems or shafts of feathers and probably remand such manufactures to the provision for nonenumerated manufactured articles at a lower rate of duty than that imposed on manufactures of kindred materials. But, however that may be, the term quill at best means the whole feather not a part of it, and as the material used in making the leaves or needles of the artificial Christmas trees was the barbs of the feather and not the whole feather, it can not be said the merchandise in question was made of quills, but of a material derived therefrom which is not entitled to the designation of quills under any authorized meaning of the word.

The decision of the Board of General Appraisers is affirmed as to protests 950743 and 952823, and reversed as to protests 948337, 952821, 956333, and 956336. The decision is affirmed as to all other merchandise involved in this appeal. *Modified.*