The judgment of the United States Customs Court is *reversed.*

UNITED STATES *v.* D. SILVER, INC. (No. 3893) [1]

United States Court of Customs and Patent Appeals, December 16, 1935

*Joseph R Jackson,* Assistant Attorney General (*Marcus Higginbottom, Jr.* and *Ralph Folks,* special attorneys, of counsel), for the United States.

No appearance for appellee.

---

[1] T. D. 48084.

[Oral argument December 6, 1935, by Mr. Folks

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT; and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

In 1932 appellee imported at the port of New York a quantity of feathers. The report of the appraiser in answer to the protest on this importation read as follows:

The merchandise in question consists of feathers, pared. It was returned for duty as feathers, advanced or manufactured, at 60% under par. 1518, act of 1930.

The Collector óf Customs classified the merchandise under said paragraph 1518 and assessed duty thereon at the rate of 60 per centum ad valorem. The importer, appellee here, protested said classification and assessment with duty, claiming that said merchandise was dutiable at the rate of 20 per centum ad valorem under that provision of said paragraph 1518 for feathers crude or not dressed, or otherwise advanced or manufactured in any manner. Other alternative claims were made in the protest, but such claims were not urged by appellee before the United States Customs Court and are not involved in this appeal. The Customs Court sustained the protest and held that the merchandise was subject to a duty of 20 per centum ad valorem under the provisions of said paragraph 1518, as crude feathers; judgment was entered accordingly, and from such judgment the Government took this appeal.

The pertinent portions of said paragraph 1518 read as follows:

Par. 1518. Feathers * * *, on the skin or otherwise, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for, 20 per centum ad valorem; dressed, colored, or otherwise advanced or manufactured in any manner, * * * 60 per centum ad valorem; * * *.

The only material testimony in the record is that of Mr. D. Silver, president of the appellee company, a witness produced by appellee. The Government offered no testimony. In this court there was no appearance by counsel for appellee, and no brief in its behalf has been filed.

It appears from the testimony of said witness that the merchandise in question consists of turkey feathers, and that, in their imported condition, they have been subjected to two operations, cutting and paring. The cutting operation consists in their being chopped off, both at the head of the feather and at the base; the witness testified that the purpose of this chopping was "to soften the feather," and also that it was done so "That the bone shall not show out of the head, and that the bone should not show out of the base." The other

operation consists in placing the feather between two parallel knives, the result of this operation being to scrape or pare off part of the bone of the feather, also with a view to softening the feather. So far as the record shows, this is all that had been done to the feathers here involved at the time of their importation. With regard to this second operation, the witness testified as follows:

X Q. This second process you say for taking two knives; what do they do with those two knives?—A. They take it between two knives in a parallel position.

X Q. And that scrapes off part of the thinner bone to make it soft?—A. Yes, sir.

Said witness Silver also testified that the feathers in their imported condition commanded a much higher price in the market than feathers which had not undergone the treatment testified to by the witness.

The Customs Court, in sustaining the claim of the importer under said paragraph 1518, relied upon the case of *United States* v. *Massce & Co.*, 9 Ct. Cust. Appls. 256, T. D. 38214. In the brief filed by the Government, it relies upon a number of cases in support of its contention that the processes to which the feathers in issue had been subjected before importation are such as to take the feathers out of the class of feathers crude or not dressed, or otherwise advanced or manufactured, and place them in the class of feathers dressed or otherwise advanced or manufactured. Whether the said processes are sufficient for this purpose represents the sole question in the case.

In our opinion, the case at bar is clearly distinguishable upon the facts from the case of *United States* v. *Massce & Co.*, *supra*, in that the treatment given the feathers here involved was of a very different character than the treatment given the goose feathers in said *Massce* case. In that case it appears from the opinion of the court that the merchandise there involved consisted of feathers obtained by stripping off one side of goose quills. The court indicated some doubt as to whether the merchandise should be considered as feathers rather than as parts of feathers, but stated that, as that question was not raised by the parties, the merchandise would be considered as feathers. The importation there involved was under the Tariff Act of 1913, paragraph 347 of which act is substantially identical with paragraph 1518 of the Tariff Act of 1930, so far as the question here involved is concerned. The court in the *Massce* case held that the mere stripping of the feathers did not advance the same within the meaning of said paragraph 347. We quote from the opinion as follows:

The simple question here is, therefore, Has the stripping of this merchandise from the quills upon which it grew "advanced" the same within the meaning of paragraph 347? We think it has not. It is just as crude as was the original feather, just as crude as is the other part. The mere splitting of a straw or the splitting of a stick of wood could hardly be said of itself to remove the split portions from the class of articles to which the entirety belonged unless some explicit statutory provision so required. The treatment of the merchandise

here has not advanced it beyond the state of crude material nor appropriated it to any particular use.

Paragraph 425 of the act of 1897, a predecessor of paragraph 347, provided for the classification of feathers in language of legal import not different from that now under consideration. In T. D. 25460 (G. A. 5739), decided July, 1904, the Board of General Appraisers had before it merchandise much like that here involved. It was held that those feathers were advanced within the meaning of the language. The Government points out that in subsequent tariff acts Congress has reenacted the paragraph without change of language in this respect and therefrom argues a legislative adoption of a judicial interpretation which should control here. An examination of the majority and minority opinions of the members of the board in that case, however, discloses that while the goose feathers there had been stripped apparently the same as in this case, they had in addition been cleaned and in most part chopped or stripped in small pieces instead of being in the original feather lengths, as here. The feathers here have not been cleaned and that fact alone may well distinguish the two cases. At any rate, we do not regard it as controlling here.

In the case at bar the treatment given the involved feathers is clearly of a different character than was the treatment given the feathers in the *Massce* case, and was also different than the treatment given the feathers in the case there cited and discussed by the court, T. D. 25460, as above quoted.

The feathers here involved concededly were subjected to a process whereby a part of the bone was scraped or pared off with a view of softening the feather. In our opinion this process brings the feathers clearly within the second provision of said paragraph 1518, namely "Feathers * * * dressed * * * or otherwise advanced or manufactured in any manner * * *."

We think this conclusion is in harmony with that paragraph of the opinion in said *Massce* case immediately following those above quoted, reading as follows:

It is pointed out that in other decisions of the Board of General Appraisers there has been a lack of uniformity of views as to the proper classification of merchandise very similar to or identical with that here involved. We find it unnecessary to enter upon any review of these cases in view of the provisions of the present paragraph. If the word "advanced" were not therein, there could be no question here as to the proper rate of duty. Without undertaking to define the precise application of that word, it appears that such treatment as dressing or coloring was deemed an advancement by Congress, *indicating that some processing of the feathers by which their condition was improved or their value enhanced was the advancement which Congress intended to be necessary to an increased rate of duty.* We do not think the merchandise here has been so advanced. [Italics ours.]

The feathers here involved have clearly been subjected to a "processing * * * by which their condition was improved or their value enhanced * * *."

In our opinion the evidence introduced by the appellee supports the classification made by the collector, and its protest should have been overruled.

The decision of the United States Customs Court, First Division, is *reversed*.

GARRETT, Judge, dissents.